## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## CIVIL DIVISION

| | | |
|---|---|---|
| Michael Perez **Plaintiff** | : | |
| | : | |
| | : | |
| **vs.** | : | **Civil Action No.** 18-CV-528 JB-N |
| | : | |
| University of South Alabama **Defendant** | : | |
| | : | |

### COMPLAINT

### JURISDICTION AND VENUE

1. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331 as to the Federal statutory claims.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Defendant is located in Mobile, Alabama.

### PARTIES

3. Defendant is the University of South Alabama (University) and located at 307 University Blvd., Mobile, AL 36688.

4. Michael Perez, Plaintiff, resides at 1617 Santa Fe Trail, Krum, TX 76249, and was a graduate student in the University's Interdisciplinary Graduate Program in Basic Medical Sciences (BMS program) from August, 2010 to May, 2016.

FILED DEC 18 '18 AM 11:00 USDC-AL-S

## STATEMENT OF FACTS

5.  The University's BMS program requires graduate students to pass a Qualifying Exam, consisting of both a written portion and an oral portion, before being admitted to Ph.D. candidacy.

6.  In July, 2015, the Plaintiff notified the University that he was having difficulty with the oral exam format, having failed the Qualifying Exam twice, and a modification of testing accommodations was necessary due to his disability in speaking skills (see Attachment #1).  In addition, the Student Handbook from the University's Office of Student Disability Services (SDS) directs the student to let "the school" know, as it does not specifically refer the student back to SDS for modifications of testing accommodations (see page 8 of Attachment #2).

7.  In August, 2015, the Plaintiff met with his faculty advocate to discuss his appeal for a third attempt at the Qualifying Exam.  During the meeting, the Plaintiff informed his faculty advocate that he wanted to request a written exam format in lieu of the oral exam format, but was advised by his faculty advocate that such a request would be immediately rejected and his appeal would not proceed to a hearing because the oral exam was a requirement for the BMS program.  When later asked in a telephone interview if he recalled advising the Plaintiff in this manner, the faculty advocate said that he did not, but he did recall a discussion about an alternative format (see paragraph 4 of Attachment #3).  Furthermore, when asked if the oral portion of the Qualifying Exam is required to be oral, the faculty advocate responded "it always has been" (see paragraph 11 of Attachment #3).

8.  During his appeal hearing in August, 2015, the plaintiff made an oral request to change the oral portion of the Qualifying Exam to a written format in order to accommodate his disability in speaking skills.  The request was denied on the grounds that the Plaintiff knew about the oral exam when he was accepted into the BMS program. This argument was later reiterated in a communication from the BMS Graduate office to the SDS office in March, 2016 (see Attachment #4).  Nevertheless, the Plaintiff's request for a third attempt at the Qualifying Exam was subsequently granted.  In addition, the faculty advocate, who was present at the hearing, stated in a telephone interview that he could not specifically remember if the Plaintiff was told he that had to take the oral exam, but said that it "wouldn't surprise me if someone did" because the oral exam was required as stated in the student handbook (see paragraph 5a of Attachment #3).

9.  In February, 2016, on his third attempt at the Qualifying Exam, the Plaintiff passed the written portion, but failed the oral portion.

10.  In May, 2016, the Plaintiff filed an institutional grievance with the SDS office alleging that the BMS program's oral exam policy was discriminatory against students with disabilities in speaking skills.  On May, 3, 2016, the Director of SDS office notified the BMS Graduate office that any policy precluding the possibility of academic adjustments to the oral exam for students with oral disabilities does not comply with the Americans with Disability Act (ADA) (see Attachment #5).

11.  On May 25, 2016, the Plaintiff was dismissed from the BMS program for failing the Qualifying Exam.

12.  In July, 2016, the Plaintiff filed a second institutional grievance, this time with the University's Senior Vice President of Academic Affairs, alleging violations of the ADA.  In their response to the Plaintiff's request for a written exam, the University again argues that the oral portion is an essential component of the Qualifying Exam and that the BMS Student Handbook states that a "written exam will not replace any portion of the requirements outlined below.  Those requirements detail the written and oral components of the Qualifying Examination" (see Attachment #6).

13.  In July, 2016, the Plaintiff filed a complaint with the Department of Education Office for Civil Rights (OCR) against the University alleging violations of the ADA and the Rehabilitation Act.  In December, 2017, the Plaintiff was notified by OCR that the University had entered into a Resolution Agreement pursuant to Section 302 of OCR's *Case Processing Manual*, effectively ending OCR's investigation before a final determination was made whether wrongdoing by the University had occurred.

14. In February, 2018, the Plaintiff filed a third institutional grievance, this time with the President of the University, alleging violations of the ADA.  However, the parties again could not come to an informal resolution agreement (see Attachment #7).

15.  In May, 2018, the Plaintiff filed a complaint with the Department of Justice Civil Rights Division Disability Rights Section (DRS) against the University alleging violation of the ADA and the Rehabilitation Act.  In June, 2018, DRS responded to the complaint by noting that DRS does not duplicate the efforts of other agencies already engaged in investigations, and declined to take further action (see Attachment #8).

## CAUSES OF ACTION

16. The present complaint alleges that:

   a) During the 2015-16 school year, the University discriminated against the
   Plaintiff and similarly situated students with disabilities in speaking skills
   when it implemented a policy of requiring oral examinations for all Ph.D.
   candidates regardless of oral disability status in noncompliance with Section
   504 implementing regulation at 34 C.F.R. § 104.43, and Title II
   implementing regulation at 28 C.F.R. § 35.130; and

   b) The University engaged in discrimination on the basis of disability (speaking
   skill) when on May 25, 2016, the University dismissed the Plaintiff from the
   BMS program for failing oral exams after the University failed to provide
   academic adjustment (written exam) in noncompliance with Section 504
   implementing regulation at 34 C.F.R. § 104.44, and Title II implementing
   regulation at 28 C.F.R. § 35.130.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that this Court will grant the following relief:

17. Declare that the University's policy of requiring oral examinations for all Ph.D.
candidates regardless of oral disability status as unlawful.

18. Declare that the University's failure to accommodate for the Plaintiff's disability
in speaking skills on his third attempt at the oral portion of the Qualifying Exam as
unlawful.

19.  Issue an injunction directing the University to re-instate the Plaintiff into the BMS program and permit the Plaintiff to retake the oral portion of the Qualifying Exam in a written format as recommended by his medical professional.

20.  Award Plaintiff the sum of $50,000 in back wages.

21.  Grant Plaintiff such other relief as the Court deems necessary and just.

Respectfully Submitted,

Michael Perez, pro se
1617 Santa Fe Trail
Krum, TX 76249
(850) 449-3524

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Complaint was sent to Tony G. Waldrup, University President, at 307 University Blvd., Mobile, AL 36688 by U.S. Mail on

_____December 17_____, 2018.

Michael Perez, pro se
1617 Santa Fe Trail
Krum, TX 76249
(850) 449-3524

Attachment #1

**Michael Perez**

| | |
|---|---|
| **From:** | Michael Perez <perez@jagmail.southalabama.edu> |
| **Sent:** | Wednesday, July 29, 2015 4:37 PM |
| **To:** | 'Mark Taylor' |
| **Cc:** | Thomas Rich |
| **Subject:** | Oral Qualifier |

Dr. Taylor,

I forgot to discuss this with you while in your office today, but you and others had commented that I often go much deeper than what is necessary to answer a question and go around in circles tying myself up in a mental knot when a simple answer will suffice.  Unfortunately, sometimes I can snap out an answer quickly and other times I have difficulty finding the right words.  For example, during the Nernst equation thing on the dry erase board, I was doing all that free-writing and brain storming activity because although I could explain the concept and work the equation, I couldn't come up with its "name" or what it was "called."  What I was trying to trigger my memory and come up with the symbol "$\Delta pH$" but I couldn't.  This sort of problem is something I've had throughout my life and academic career, and it isn't something that I can overcome nor control. Mental blocks and problems with word recall that you witnessed during my two previous qualifier exams will always be part of any future oral exam no matter what.  If my appeal to the SPEC committee is approved, then we may have to consider an alternative format because that sort of problem isn't something that will ever change for me.

Cheers,
Michael

Attachment #2

# University of South Alabama



# STUDENT DISABILITY SERVICES
## Student Handbook

**320 Alumni Circle Ste 19**
**Mobile, Alabama 36688**
**(251) 460-7212**

## Mission Statement

Embracing the University of South Alabama's general mission that emphasizes teaching excellence while encouraging research, creative work, and service to the University and the community, Student Disability Services enhances this mission for students with disabilities.   Special Student Services' philosophy is to provide an education for individuals with disabilities through equal access, empowerment, support, resources, advocacy, collaboration and outreach throughout the University and community.

In addition to providing services and accommodations to students with disabilities as mandated by Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act Amendments Act (ADAAA) of 2010, Student Disability Services works closely with faculty and staff in an advisory capacity and assists in the development of reasonable accommodations that allow students with disabilities to fully participate in all of the programs offered on campus.

**Alternative format available upon request**

## Student Disability Services Staff Members

**Dr. Andrea Agnew**

Assistant Dean of Students and Director of Student Disability Services

**Maggi Fields**

Coordinator, Office of Student Disability Services

**Latasha Perine**

Coordinator, Office of Student Disability Services

**Jacqueline Arrington**

Secretary, Office of Student Disability Services

# CONTENTS

**Students with Disabilities Preparing for Postsecondary Education: Know Your Rights and Responsibilities (Complete text from U.S. Dept of Education)**   **5**

**Admission to USA**   **11**

**Services for Students**   **12**

**Documentation of Disabilities**   **15**

**Documentation Requirements**

- **Attention Deficit Hyperactivity Disorder**   **16**

- **Learning Disability**   **18**

- **Mobility, Sensory, & Systemic Disorders**   **20**

- **Psychiatric Disorders**   **21**

- **Traumatic Brain Injury**   **22**

**Accommodations Requests**   **23**

**Academic Accommodations**   **24**

**Grievance Process**   **25**

**Helpful Phone Numbers**   **26**

**Notes**   **27**

4

## Students with Disabilities Preparing for Postsecondary Education: Know Your Rights and Responsibilities

U.S. Department of Education
Office for Civil Rights
Washington, D.C. 20202

More and more high school students with disabilities are planning to continue their education in postsecondary schools, including vocational and career schools, two- and four- year colleges, and universities. As a student with a disability, you need to be well informed about your rights and responsibilities as well as the responsibilities postsecondary schools have toward you. Being well informed will help ensure you have a full opportunity to enjoy the benefits of the postsecondary education experience without confusion or delay.

The information in this pamphlet, provided by the Office for Civil Rights (OCR) in the U. S. Department of Education, explains the rights and responsibilities of students with disabilities who are preparing to attend postsecondary schools. This pamphlet also explains the obligations of a postsecondary school to provide academic adjustments, including auxiliary aids and services, to ensure the school does not discriminate on the basis of disability.

OCR enforces Section 504 of the *Rehabilitation Act of 1973* (Section 504) and Title II of the *Americans with Disabilities Act of 1990* (Title II), which prohibit discrimination on the basis of disability. Practically every school district and postsecondary school in the United States is subject to one or both of these laws, which have similar requirements.\*/

Although Section 504 and Title II apply to both school districts and postsecondary schools, the responsibilities of postsecondary schools differ significantly from those of school districts.

Moreover, you will have responsibilities as a postsecondary student that you do not have as a high school student. OCR strongly encourages you to know your responsibilities and those of postsecondary schools under Section 504 and Title II. Doing so will improve your opportunity to succeed as you enter postsecondary education.

The following questions and answers provide more specific information to help you succeed.

**As a student with a disability leaving high school and entering postsecondary education, will I see differences in my rights and how they are addressed?**

Yes. Section 504 and Title II protect elementary, secondary, and postsecondary students from discrimination. Nevertheless, several of the requirements that apply through high school are different from the requirements that apply beyond high school. For instance, Section 504 requires a school district to provide a free appropriate public education (FAPE) to each child with a disability in the district's jurisdiction. Whatever the disability, a school district must identify an individual's educational needs and

5



provide any regular or special education and related aids and services necessary to meet those needs as well as it is meeting the needs of students without disabilities.

Unlike your high school, however, your postsecondary school is not required to provide FAPE. Rather, your postsecondary school is required to provide appropriate academic adjustments as necessary to ensure that it does not discriminate on the basis of disability. In addition, if your postsecondary school provides housing to nondisabled students, it must provide comparable, convenient, and accessible housing to students with disabilities at the same cost.

Other important differences that you need to know, even before you arrive at your postsecondary school, are addressed in the remaining questions.

### May a postsecondary school deny my admission because I have a disability?

No. If you meet the essential requirements for admission, a postsecondary school may not deny your admission simply because you have a disability.

### Do I have to inform a postsecondary school that I have a disability?

No. But if you want the school to provide an academic adjustment, you must identify yourself as having a disability. Likewise, you should let the school know about your disability if you want to ensure that you are assigned to accessible facilities. In any event, your disclosure of a disability is always voluntary.

### What academic adjustments must a postsecondary school provide?

The appropriate academic adjustment must be determined based on your disability and individual needs. Academic adjustments may include auxiliary aids and services, as well as modifications to academic requirements as necessary to ensure equal educational opportunity. Examples of adjustments are: arranging for priority registration; reducing a course load; substituting one course for another; providing note takers, recording devices, sign language interpreters, extended time for testing, and, if telephones are provided in dorm rooms, a TTY in your dorm room; and equipping school computers with screen-reading, voice recognition, or other adaptive software or hardware.

In providing an academic adjustment, your postsecondary school is not required to lower or substantially modify essential requirements. For example, although your school may be required to provide extended testing time, it is not required to change the substantive content of the test. In addition, your postsecondary school does not have to make adjustments that would fundamentally alter the nature of a service, program, or activity, or that would result in an undue financial or administrative burden. Finally, your postsecondary school does not have to provide personal attendants, individually prescribed devices, readers for personal use or study, or other devices or services of a personal nature, such as tutoring and typing.

### If I want an academic adjustment, what must I do?

You must inform the school that you have a disability and need an academic adjustment. Unlike your school district, your postsecondary school is not required to

6



identify you as having a disability or to assess your needs.

Your postsecondary school may require you to follow reasonable procedures to request an academic adjustment. You are responsible for knowing and following those procedures. In their publications providing general information, postsecondary schools usually include information on the procedures and contacts for requesting an academic adjustment. Such publications include recruitment materials, catalogs, and student handbooks, and are often available on school websites. Many schools also have staff whose purpose is to assist students with disabilities. If you are unable to locate the procedures, ask a school official, such as an admissions officer or counselor.

**When should I request an academic adjustment?**

Although you may request an academic adjustment from your postsecondary school at any time, you should request it as early as possible. Some academic adjustments may take more time to provide than others. You should follow your school's procedures to ensure that the school has enough time to review your request and provide an appropriate academic adjustment.

**Do I have to prove that I have a disability to obtain an academic adjustment?**

Generally, yes. Your school will probably require you to provide documentation showing that you have a current disability and need an academic adjustment.

**What documentation should I provide?**

Schools may set reasonable standards for documentation. Some schools require more documentation than others. They may require you to provide documentation prepared by an appropriate professional, such as a medical doctor, psychologist, or other qualified diagnostician. The required documentation may include one or more of the following: a diagnosis of your current disability, as well as supporting information, such as the date of the diagnosis, how that diagnosis was reached, and the credentials of the diagnosing professional; information on how your disability affects a major life activity; and information on how the disability affects your academic performance. The documentation should provide enough information for you and your school to decide what is an appropriate academic adjustment.

An individualized education program (IEP) or Section 504 plan, if you have one, may help identify services that have been effective for you. This is generally not sufficient documentation, however, because of the differences between postsecondary education and high school education. What you need to meet the new demands of postsecondary education may be different from what worked for you in high school. Also, in some cases, the nature of a disability may change.

If the documentation that you have does not meet the postsecondary school's requirements, a school official should tell you in a timely manner what additional documentation you need to provide. You may need a new evaluation in order to provide the required documentation.

**Who has to pay for a new evaluation?**

7



Neither your high school nor your postsecondary school is required to conduct or pay for a new evaluation to document your disability and need for an academic adjustment. You may, therefore, have to pay or find funding to pay an appropriate professional for an evaluation. If you are eligible for services through your state vocational rehabilitation agency, you may qualify for an evaluation at no cost to you. You may locate your state vocational rehabilitation agency at http://rsa.ed.gov by clicking on "Info about RSA," then "People and Offices," and then "State Agencies/ Contacts."

**Once the school has received the necessary documentation from me, what should I expect?**

To determine an appropriate academic adjustment, the school will review your request in light of the essential requirements for the relevant program. It is important to remember that the school is not required to lower or waive essential requirements. If you have requested a specific academic adjustment, the school may offer that academic adjustment, or it may offer an effective alternative. The school may also conduct its own evaluation of your disability and needs at its own expense.

You should expect your school to work with you in an interactive process to identify an appropriate academic adjustment. Unlike the experience you may have had in high school, however, do not expect your postsecondary school to invite your parents to participate in the process or to develop an IEP for you.

**What if the academic adjustment we identified is not working?**

Let the school know as soon as you become aware that the results are not what you expected. It may be too late to correct the problem if you wait until the course or activity is completed. You and your school should work together to resolve the problem.

**May a postsecondary school charge me for providing an academic adjustment?**

No. Nor may it charge students with disabilities more for participating in its programs or activities than it charges students who do not have disabilities.

**What can I do if I believe the school is discriminating against me?**

Practically every postsecondary school must have a person—frequently called the Section 504 Coordinator, ADA Coordinator, or Disability Services Coordinator—who coordinates the school's compliance with Section 504, Title II, or both laws. You may contact that person for information about how to address your concerns.

The school must also have grievance procedures. These procedures are not the same as the due process procedures with which you may be familiar from high school. But the postsecondary school's grievance procedures must include steps to ensure that you may raise your concerns fully and fairly, and must provide for the prompt and equitable resolution of complaints.

School publications, such as student handbooks and catalogs, usually describe the steps that you must take to start the grievance process. Often, schools have both

8



formal and informal processes. If you decide to use a grievance process, you should be prepared to present all the reasons that support your request.

If you are dissatisfied with the outcome of the school's grievance procedures or wish to pursue an alternative to using those procedures, you may file a complaint against the school with OCR or in a court. You may learn more about the OCR complaint process from the brochure *How to File a Discrimination Complaint with the Office for Civil Rights*, which you may obtain by contacting us at the addresses and phone numbers below, or at http://www.ed.gov/ocr/docs/howto.html.

If you would like more information about the responsibilities of postsecondary schools to students with disabilities, read the OCR brochure *Auxiliary Aids and Services for Postsecondary Students with Disabilities: Higher Education's Obligations Under Section 504 and Title II of the ADA.* You may obtain a copy by contacting us at the address and phone numbers below, or at http://www.ed.gov/ocr/docs/auxaids.html.

Students with disabilities who know their rights and responsibilities are much better equipped to succeed in postsecondary school. We encourage you to work with the staff at your school because they, too, want you to succeed. Seek the support of family, friends, and fellow students, including those with disabilities. Know your talents and capitalize on them, and believe in yourself as you embrace new challenges in your education.

**To receive more information about the civil rights of students with disabilities in education institutions, you may contact us at:**

Customer Service Team
Office for Civil Rights
U.S. Department of Education
Washington, D.C. 20202-1100

**Phone: 1-800-421-3481**
TDD: 1- 877-521-2172
Email: ocr@ed.gov
Web site: www.ed.gov/ocr

*\*/You may be familiar with another federal law that applies to the education of students with disabilities—the Individuals with Disabilities Education Act (IDEA). That law is administered by the Office of Special Education Programs in the Office of Special Education and Rehabilitative Services in the U.S. Department of Education. The IDEA and its individualized education program (IEP) provisions do not apply to postsecondary schools. This pamphlet does not discuss the IDEA or state and local laws that may apply.*

*(September 2011)*

9

## ADMISSION TO USA

The Office of Admissions handles all applications for undergraduate and graduate admission. Admission standards are described in the USA Bulletin and must be met by all students, including students with disabilities. Admissions is located 2500 Meisler Hall. Contact the Office of Admissions at 460-6141. All information regarding disabilities should be sent to Student Disability Services, not to the Office of Admissions.

The Office of New Student Orientation provides programs for incoming students. Students with disabilities are encouraged to visit Student Disability Services during orientation. Students who may need accommodations during orientation should contact New Student Orientation at 460-7093. The New Student Orientation office is located at 2600 Meisler Hall.

New Student Orientation website:
http://www.usouthal.edu/departments/orientation/index.html

10

# SERVICES FOR STUDENTS

### Assistive Computer Technology
Assistive computer technology is available in the Student Disability Services computer lab.  The lab is wheelchair accessible and contains text-to-voice software, text scanning equipment, screen readers and magnifiers.

### Campus Accessibility
Students are responsible for notifying Student Disability Services if a classroom, activity, or program is not accessible.  Student Disability Services is responsible for arranging appropriate accommodations.

### Career Services
Career Services assists students and alumni by providing educational and career resources and advising. Part-time, full-time, internship, and cooperative education positions may be available through Career Services.  Contact Career Services at 460-6188.  Career Services is located at 2100 Meisler Hall. Career Services website: http://www.southalabama.edu/careerservices/

### Counseling and Testing Services
USA Counseling and Testing Services is a comprehensive developmental/mental health center providing a full range of services to meet the needs of students. USA Counseling and Testing Services is staffed by Licensed Professional Counselors who are available to assist students with personal, academic, and vocational concerns.  Individual counseling, group counseling, and educational materials are available.  USA Counseling and Testing Services is located in Alpha Hall East, room 236 and may be contacted at 460-7051.  USA Counseling and Testing Services website:  http://www.southalabama.edu/counseling/

### Student Disability Services
Student Disability Services is the primary resource for USA students with disabilities. Services for students focus on providing academic accommodations, while promoting student responsibility and self-advocacy. Student Disability Services is located at 5828 Old Shell Road (at the corner of Old Shell Road and Jaguar Drive). Student Disability Services website:  http://www.southalabama.edu/dss/

| | |
|---|---|
| Phone | (251) 460-7212 |
| Fax | (251) 414-8176 |
| Email | specialstudents@southalabama.edu |
| Mailing address | 5828 Old Shell Rd. |
| | Mobile, AL 36688 |

11

Students who choose not to self-identify when they enter USA may identify themselves and receive accommodations at any time during their USA career. **USA is not obligated to provide services for students with disabilities until students register with Student Disability Services and request accommodations.**

### Financial Aid

Office of Financial Aid offers grants, loans, scholarships, and work-study for eligible students. Students with disabilities are eligible for the same financial assistance as other students: there are no federal financial aid programs specifically for students with disabilities. The Financial Aid Office is located 1200 Meisler Hall. Contact Financial Aid at 460-6231.
Financial Aid website:  http://www.southalabama.edu/finaid/

### Residence Life

Residence Life provides a variety of housing options for USA students. Students should apply for campus housing as early as possible if they have special housing needs, and they should indicate any special needs on the Student Housing Application. Contact Housing at 460-6185. The Housing office is located in Delta Commons, Room 110.
Residence Life website:  http://www.southalabama.edu/housing/

### Library Access and Assistance

University of South Alabama Libraries provide students, faculty and staff with access to library collections and services. Services may include retrieval of materials, photocopying assistance, library orientation, special checkout arrangements, and extended loan periods. Main Campus: Handicapped parking spaces are located by the loading dock on the West side of the library. A ramp on the dock leads to the West entrance. Handicapped spaces are also available in the North parking lot near the sidewalk. For hours of operation and additional information, please contact 460-7025. University Libraries website:  https://southalabama.edu/libraries/index.html

### Math Labs

The Math Department has two computer labs, located in ILB (Instructional Laboratory Building) 405 and ILB 245. The department offers extensive tutoring and computer assistance for MA 112, MA 113, MA 115, and ST 210. The schedule for tutoring can be found on the Math Department website located at http://www.southalabama.edu/mathstat, or contact 460-6264.

### Parking Services

Persons requiring temporary special parking arrangements may obtain an application for special parking from Student Disability Services. Proof of disability will be required. The special parking permit will allow parking in any available faculty/staff space. Handicapped spaces are off limits, but handicapped students may obtain permits to park in handicapped spaces. Applications may be obtained

12

 

from Student Disability Services. Students must show handicapped placard which is registered in the student's name or handicap vehicle license plate number registered to the student. Specific parking questions may be addressed to the University Police Office located in the Beta/Gamma Commons Building, 290 Stadium Blvd. or contact 461-1481.

Parking Services website:  http://www.southalabama.edu/parkingservices/

## Student Health Services

 Student Health Services provides medical care for USA students, including the prevention of illness, treatment of disease or injury, and counseling and advice. Appointments are encouraged, but emergencies are seen immediately. Student Health Services is located at 650 Clinic Dr., Suite 1200 (Research Park Building III). For additional information or to schedule an appointment, contact 460-6283.
Student Health Services website:  http://www.southalabama.edu/studenthealth/

## The Writing Center

The Writing Center is not a proofreading service. It is a teaching center, and its tutors are called consultants. Writing consultants focus on the writer rather than the writing, with the goal of teaching concepts to students. Instead of simply editing student writing, the consultants help students learn techniques and strategies to improve their own writing skills. The Writing Center is located in Room 230 of Alpha Hall East. To schedule an appointment with a writing consultant, call the Writing Center at 460-6283.
The Writing Center website:  http://www.southalabama.edu/writing/

13

# DOCUMENTATION OF DISABILITIES

Students with disabilities who are requesting accommodations from USA must submit documentation of their disability to Student Disability Services.  Detailed guidelines for documentation of disabilities are located in this handbook and on the Student Disability Services website at http://www.southalabama.edu/dss.  These guidelines should be provided to the person or agency responsible for conducting the evaluation.  Documentation costs are the student's responsibility.

Student Disability Services cannot accept documentation that is more than three years old (one year for psychiatric disabilities).  Usually, documentation accepted by Student Disability Services is valid as long as the student is continuously enrolled at USA.  However, updated documentation may be requested if a student leaves USA and returns, or if a student experiences a significant change in physical, mental, or social situation.

### Confidentiality of Information

Student Disability Services is the only USA office that has access to documentation and information related to a student's disability.  (Documentation is maintained securely and disability diagnoses are kept confidential.)  In addition, confidentiality is maintained in all verbal conversations between Student Disability Services staff members and registered students and faculty/staff.  Generally, no information is released to anyone outside of Student Disability Services without the student's informed and written consent.  Student Disability Services may release information to USA officials if there is a direct threat to the health or safety of USA students, faculty, and/or staff. Documentation is destroyed seven years after the last semester students are enrolled at USA.

14



# DOCUMENTATION REQUIREMENTS
## ATTENTION DEFICIT HYPERACTIVITY DISORDER

### *All reports should be typed on letterhead, dated and signed.*

A High School IEP, 504 Plan, and /or a letter from a physician or other professional will not be sufficient to document a learning disability.  Medication cannot be used to imply a diagnosis.

The following must be included in a report:

I.   **Qualifications of the Evaluator** – The evaluator's name, title, and license/certificate credentials must be stated.

II.  **Current Documentation** – Evaluation data must be no more than three years old.

III. **Evidence of early impairment** - The condition must have been exhibited in childhood in one or more settings.  Please include a brief academic history.

IV.  **Evidence of current impairment** - In addition to the individual's history, documentation of current difficulties must include the student's clinically significant impairment in current social, academic, or occupational functioning. Must include evidence of impairment in two or more settings.  Please include a description of how this individual is functionally limited in the classroom.

V. **Historical Information, Diagnostic Interview, Psychological Evaluation**
a.   Developmental history, including history of symptoms
b.   Duration and severity of the disorder
c.   Relevant, developmental, historical, and familial data
d.   Behavioral Assessment Instruments for ADHD normed on adults; these should include at least two ratings scales (with scores and summary data) completed by individuals other than parents (preferably teachers).

VI.  **Neuropsychological or psychoeducational assessments** - Such assessments are necessary to determine the current impact of the disorder on the individual's ability to function in an academic setting.  Data should include subtest and standard scores to support conclusions, and should at least include most recent versions of a comprehensive intelligence battery and a comprehensive achievement battery. (Note: Assessments such as checklist and rating scales are very important, but checklists, scales or subtest scores should not be used as the sole criterion for a diagnosis of ADHD.)



*All reports must include an interpretation of test results. Test protocol sheets, handwritten summary sheets or scores alone are not sufficient.*

### Acceptable instruments – Aptitude / Cognitive ability
- Wechsler Adult Intelligence Scale III (or latest version). The WAIS is the preferred instrument
- Woodcock-Johnson Psychoeducational Battery – Revised: Test of Cognitive Ability
- Stanford-Binet Intelligence Scale

### Unacceptable instruments – Aptitude / Cognitive ability
- The Kaufman Brief Intelligence Test (KBIT) is not a comprehensive measure and is therefore not suitable for documentation purposes at USA
- Wechsler Intelligence Scale for Children (WISC) – this instrument is not standardized for use with adults

### Acceptable instruments – Academic Achievement
- The Woodcock-Johnson Psychoeducational Battery – Revised: Test of Achievement
- Wechsler Individual Achievement Test (WIAT)
- Standard Test of Academic Skills (TASK)
- Scholastic Abilities Test for Adults (SATA)
- Specific achievement tests such as Test of Written Language - 4 (TOWL - 4), Woodcock Reading Mastery Tests – Revised, or the Stanford Diagnostic Mathematics Test

### Unacceptable instruments – Academic Achievements
- The Wide Range Achievement Test (WRAT)
- Mini-Battery of Achievement (These are not comprehensive measures of achievement and are therefore not suitable for documentation purposes at USA)

VII. **Diagnosis -** A clear and specific statement that the student is diagnosed with ADHD and the **accompanying DSM-V code(s)** are required. Must include DSM-V criteria upon which this diagnosis was established. Alternative explanations and diagnoses must be ruled out.

VIII. **Medication -** Indicate whether or not the student is diagnosed while on medication, and whether or not the prescribed treatment produced a positive response. Medication alone cannot be used to support a diagnosis.

IX. **Recommendations for Accommodations –** The report must include specific recommendations for academic accommodations and the rationale for those accommodations. A history of accommodations does not, in itself, warrant the provision of similar accommodations

16

# DOCUMENTATION REQUIREMENTS
# LEARNING DISABILITY

### *All reports should be typed on letterhead, dated and signed.*

A High School IEP, 504 Plan, and /or a letter from a physician or other professional will not be sufficient to document a learning disability.  Medication cannot be used to imply a diagnosis.

The following must be included in a report:

I.   **Qualifications of the Evaluator** – The evaluator's name, title, and license/certificate credentials must be stated.

II.  **Current Documentation** – Evaluation data must be no more than three years old.

III. **Academic History** – Academic history documenting impact of learning disability.

IV.  **Neuropsychological or psychoeducational assessments** - Data should include subtest and standard scores to support conclusions, and should at least include **most recent versions** of a *comprehensive intelligence battery* **and** a *comprehensive achievement battery.*

   *All reports must include an interpretation of test results.  Test protocol sheets, handwritten summary sheets or scores alone are not sufficient.*

   *Acceptable instruments – Aptitude / Cognitive ability*
   - Wechsler Adult Intelligence Scale III (or latest version).  The WAIS is the preferred instrument
   - Woodcock-Johnson Psychoeducational Battery – Revised: Test of Cognitive Ability
   - Stanford-Binet Intelligence Scale

17



*Unacceptable instruments – Aptitude / Cognitive ability*
- The Kaufman Brief Intelligence Test (KBIT) is not a comprehensive measure and is therefore not suitable for documentation purposes at USA
- Wechsler Intelligence Scale for Children (WISC) – this instrument is not standardized for use with adults

*Acceptable instruments – Academic Achievement*
- The Woodcock-Johnson Psychoeducational Battery – Revised: Test of Achievement
- Wechsler Individual Achievement Test (WIAT)
- Standard Test of Academic Skills (TASK)
- Scholastic Abilities Test for Adults (SATA)
- Specific achievement tests such as Test of Written Language – 3 (TOWL-3), Woodcock Reading Mastery Tests – Revised, or the Stanford Diagnostic Mathematics Test

*Unacceptable instruments – Academic Achievements*
- The Wide Range Achievement Test (WRAT)
- Mini-Battery of Achievement (These are not comprehensive measures of achievement and are therefore not suitable for documentation purposes at USA.)

V.   **Functional Limitations** - Defined levels of functioning, limitations, and recommendations supported by evaluation data.

VI.   **Diagnosis** – DSM-V code and clearly stated diagnosis of a learning disability based upon DSM-V criteria and supported by several subtest scores which show a significant discrepancy AND are at least approaching one SD below the mean of the test (in most cases, the mean is 100 with a SD of 15).

VII.   **Recommendations for Accommodations** - The report must include specific recommendations for academic accommodations and the rationale for those accommodations. A history of accommodations does not, in itself, warrant the provision of similar accommodations at USA.



# DOCUMENTATION REQUIREMENTS:
# MOBILITY, SENSORY, AND SYSTEMIC
# DISORDERS

## *All reports should be typed on letterhead, dated and signed.*

I.   **Qualifications of the Evaluator** – The evaluator's name, title, and license/certificate credentials must be stated.

II.  **Current Documentation** – Evaluation data must be no more than three years old.

III. **History to Support Diagnosis** – A description of the duration and severity of the disorder must be included. In addition, date of diagnosis, last contact with the individual, and approximate date of onset should be included.

IV.  **Assessment of Mobility, Sensory, and/or Systemic Disorder** – A description of current symptoms and current treatments must be included. If the student is taking any medication related to the disability, the evaluator should describe the impact of that medication on the student's ability to participate in an academic environment.

V.   **Diagnosis** – A SPECIFIC statement that the student is diagnosed with a particular disorder, including the DSM-V or ICD-10 diagnostic (numeral) code, is required.

VI.  **Substantial Limitation to Learning** – Mobility, sensory, or systemic disability must limit a major life activity, such as walking, learning, seeing, or sleeping, and there must be a significant limitation relative to what is common to the 'average' person. The evaluator must describe the major life activity affected by the disability and describe how the disability presents a substantial limitation to academic performance.

VII. **Recommendations for Accommodations** – The report must include specific recommendations for academic accommodations and the rationale for those accommodations. A history of accommodations does not, in itself, warrant the provision of similar accommodations at USA.

19



## DOCUMENTATION REQUIREMENTS
## PSYCHIATRIC DISORDERS

### *All report should be typed on letterhead, dated and signed.*

I.  **Qualifications of the Evaluator** – The evaluator's name, title, and license/certificate credentials must be stated.

II. **Current Documentation** – Evaluation data must be no more than one year old.

III. **History to Support Diagnosis** – A description of the duration and severity of the disorder must be included. In addition, relevant medical, familial, and social histories should be included.

IV. **Assessment of Psychiatric Disorders** – The evaluator should include specific evaluation data to support a diagnosis of a psychiatric disorder. Results of standardized assessments, rating scales, or checklists are important, but need not be the sole criterion for a diagnosis of a psychiatric disorder. A description of current symptoms and current treatments must be included. If the student is taking any medication related to the disability, the evaluator should describe the impact of that medication on the student's ability to participate in an academic environment.

V. **DSM-V or ICD-10 Diagnosis** – A SPECIFIC statement that the student is diagnosed with a particular disorder, including the DSM-V or ICD-10 diagnostic (numeral) code, is required.

VI. **Substantial Limitation to Learning** – A psychiatric disability must limit a major life activity, such as learning, sleeping, or working, and there must be a significant limitation relative to what is common to the 'average' person. The evaluator must describe the major life activity affected by the psychiatric disability and describe how the disability presents a substantial limitation to academic performance.

VII. **Recommendations for Accommodations** – The report must include specific recommendations for academic accommodations and the rationale for those accommodations. A history of accommodations does not, in itself, warrant the provision of similar accommodations at USA.

20

## DOCUMENTATION REQUIREMENTS
## TRAUMATIC BRAIN INJURY

### *All reports should be typed on letterhead, dated and signed.*

I.  **Qualifications of the Evaluator** – The evaluator's name, title, and license/certificate credentials must be stated.

II.  **Current Documentation** – Evaluation data must be no more than three years old.

III.  **History to Support Diagnosis** – A description of the duration and severity of the injury must be included. In addition, date of diagnosis, last contact with the individual, approximate date of onset, and symptoms should be included.

IV.  **Assessment of Cognitive Abilities and Educational Achievement** – The evaluator should provide an assessment of the student's cognitive abilities, including processing speed and memory (post-rehabilitation and within one year). Also, standard scores from individually administered, standardized achievement tests must be reported. The evaluator should assess reading comprehension, written language, spelling, and mathematical abilities. If the student is taking any medication related to the disability, the evaluator should describe the impact of that medication on the student's ability to participate in a college environment.

V.  **DSM-V or ICD-10 Diagnosis** – A SPECIFIC statement that the student is diagnosed with a neurological injury, including the DSM-V or ICD-10 diagnostic (numeral) code, is required.

VI.  **Substantial Limitation to Learning** – The disability must limit a major life activity, such as walking, learning, or working, and there must be a significant limitation relative to what is common to the 'average' person. The evaluator must describe the major life activity affected by the disability and describe how the disability presents a substantial limitation to academic performance.

VII.  **Recommendations for Accommodations** – The report must include specific recommendations for academic accommodations and the rationale for those accommodations. A history of accommodations does not, in itself, warrant the provision of similar accommodations at USA.



## REQUESTING CLASSROOM ACCOMMODATIONS

Classroom accommodations are provided on a semester-by-semester basis. Student Disability Services prepares a letter addressed to the instructor of each class for which students request accommodations. Students are responsible for requesting accommodation letters from Student Disability Services at the beginning of each semester, delivering these letters to instructors, and scheduling the requested accommodations with instructors throughout the semester. Students may request classroom accommodation letters at any time during the semester, but instructors are not obliged to provide accommodations until they receive official accommodation letters from students. Students must discuss with each instructor the need for testing accommodations well in advance of a test. Finally, students are responsible for reporting to Student Disability Services any concerns about implementation of classroom accommodations.

**Receiving classroom accommodations at USA is a 4-step procedure:**

1. Students obtain accommodation letters from Student Disability Services at the beginning of each semester.

2. Students can email or print and hand-deliver accommodation letters to each instructor.

3. Students must discuss with each instructor the need for testing accommodations well in advance of a test, i.e. such as extended testing time and distraction reduced testing environment. For testing at Student Disability Services, students must complete a test accommodations request form two days prior to each examination. NOTE: Requests for final exams must be received one week prior to exam.

4. Students report any concerns about accommodations to Student Disability Services as soon as possible.

## ACADEMIC ACCOMMODATIONS

Student Disability Services may recommend the following academic accommodations based upon **appropriate documentation** and individual class requirements.

### Academic Aids
Students may use calculators, dictionaries, word processors, spell checkers, and/or grammar checkers for in-class work.

### Priority Registration
All students registered with Student Disability Services are eligible for priority registration. Student Disability Services does not advise students on curriculum and course selection. Academic advisors are listed in the *JagTraks Registration Guide* on the *Registration Contacts* page. This information may be located on the following website:  https://southalabama.edu/schedule/index.html

### Reading Assistance
Students may request readers, text-to-voice computer software, and/or audiobooks. Text-to-voice software is available in the Student Disability Services computer lab.

### Sign Language Interpreting
Deaf and hard of hearing students may be provided with state licensed/permitted interpreters for class sessions, class-related activities, and USA-related events.

### Audio Recording, Note Taking Assistance, and Scribes
Students may record class lectures and/or request peer note takers. Student Disability Services can provide recorders for students and carbonless paper for note takers. Student Disability Services can provide scribes for students requiring such assistance.

### Testing Accommodations
Testing accommodations may include extended time (time and one-half to double time), reduced-distraction testing situations, and/or alternate test formats (such as Braille or orally administered tests). Tests may be administered in each department, whenever possible.

*Services of a personal nature are not considered academic accommodations. Examples of personal services include tutoring, transportation, and attendant care.*

23



## GRIEVANCE PROCESS

Questions and concerns regarding accommodations and services for students with disabilities should be directed first to Student Disability Services. If the Student Disability Services staff members cannot resolve an issue, a meeting with the student, the instructor (if appropriate), the Student Disability Services Director, and the Dean of Students may be requested. If an agreement is not reached at this point, the student may file a formal, written appeal. The appeal should clearly describe the complaint in detail, and should be transmitted as a confidential document to:

Vice President of Student Affairs
307 N. University Blvd.
Administration Building, Room 130
Mobile, Alabama 36688

During the grievance process, students are entitled to receive all accommodations recommended by Student Disability Services. It is important that concerns are addressed promptly so that the student's participation in courses is not affected.

### Steps in the Grievance Process

1. Consult with Student Disability Services staff members.

2. If the situation is not resolved in step 1, meet with the instructor (if appropriate), the Director of Student Disability Services, and the Dean of Students.

3. If the situation is not resolved in step 2, submit a formal, written appeal to the Vice President of Student Affairs.

If a complaint is not resolved through the USA Grievance Process, students may file a formal complaint with the regional Office for Civil Rights in Atlanta, Georgia. The Office of Civil Rights investigates complaints alleging violations of the ADAAA OF 2010 or Section 504 of the Rehabilitation Act of 1973.

# HELPFUL PHONE NUMBERS
### (The area code is 251)

| | |
|---|---|
| Student Disability Services | 460-7212 |
| Admissions Office | 460-6141 |
| Career Services | 460-6188 |
| Counseling & Testing Services | 460-7051 |
| Financial Aid | 460-6231 |
| Graduate School | 460-6310 |
| Residence Life | 460-6185 |
| Library | 460-7025 |
| Math Department | 460-6264 |
| Parking Services | 461-1481 |
| Campus Police | 460-6312 |
| Student Health Services | 460-7151 |
| Writing Center | 460-6283 |
| Jag Tran | 460-7735 |
| Dining Services | 460-6296 |
| Registrar | 460-6251 |
| Campus Bookstore | 460-7012 |
| Dean of Students | 460-6172 |

25

Attachment #3

| **RECORD OF CONTACT** | |
|---|---|
| OCR Case #: | **04-16-2275- University of South Alabama** |
| OCR REPRESENTATIVE: | Zandra V. Hall, Attorney |
| CALL TO: | (b)(6),(b)(7)(C) |
| CONTACT NUMBER: | (b)(6),(b)(7)(C) |
| DATE: | February 27, 2017 |
| REASON FOR CALL: | Witness Interview |

OCR explained its role, the purpose of the interview, FOIA and Privacy information, and the witness rights. The witness had no questions.

1.  **Please tell me your name, title, and how long you have been in the position.**

    (b)(6),(b)(7)(C) He has been at the University for 37 years.

2.  **Briefly describe your role at the university as well as your role on the Complainant's Qualifying Exam Committee.**

    He was not on the Complainant's Qualifying Exam committee. He met the Complainant in 2010 when the Complainant first enrolled at the University and became an advocate for the Complainant in 2015 for the appeals process. He met with the Complainant to discuss how the Complainant would appeal to the Special Education and Promotion Committee (SPEC) and also helped the Complainant with the appeal letter to SPEC.

3.  **At what time were you alerted to the Complainant's disability status and by whom?**

    He was informed of the Complainant's status when they met to review the appeal letter. He learned that the Complainant had a "slow track" in the graduate school (had reduced hours) and had some difficulty with presentation and oral exams. He and the Complainant developed a plan for the appeal so that the Complainant could take the oral qualifying exam again. The Complainant never mentioned having an oral disability, only that he had been granted accommodations for a quiet area to take exams and that he had difficulty in answering questions in an impromptu manner. The Complainant said that if he had more time to write down the questions and not be prompted so quickly, he could complete the exam. He just needed time to think. The plan they developed for the appeal would give the Complainant time to write things down and he would present the plan to SPEC so that they would give him a third opportunity to take the oral exam. The Complainant never spoke about a written, multiple choice format.

4.  **Do you recall advising the Complainant, that if he asked SPEC for a written format, he would not get through the committee?**

    No. Discussion about an alternative format did not come up until after the Complainant failed both the written and oral exams the second time. They discussed his ability to stand up in front of people and answer questions in a rapid format and also discussed how to do his written portion of the exam. Another problem the Complainant had was that he had not completed all required coursework.

04-16-2275 (University of South Alabama)

**5. What was your role as Complainant's advocate?**

In early August 2015, the Complainant asked the witness to be the Complainant's advocate. The Complainant was appealing his last failure on his dissertation defense. The witness agreed to serve as the advocate and a few days later, the program Director also requested that the witness serve as an advocate for the Complainant during his appeal meeting with the SPEC. The witness went to the SPEC meeting as the Complainant's advocate on August 25, 2015 and spoke on Complainant's behalf, highlighting the points they had discussed as reason to give the Complainant another chance at taking the exam. He told the SPEC that the Complainant had done well in his coursework and felt the Complainant had done everything that he was supposed to do. The Complainant did not discuss with the witness an alternative format to the oral exam, other than having more time to write down the questions.

**a. Do you recall if anyone in the SPEC meeting told him he had to take an oral exam?**

He did not specifically remember if anyone said the Complainant had to take an oral exam, but "wouldn't surprise me if someone did," because there was an oral part of the exam in the handbook.

**6. What is your understanding of the purpose of the oral exam?**

The purpose of the oral exam is for the student to defend the research and show people that they did the research and understood the research. The student should know more about the subject more than anyone on campus.

**7. Did you have conversations with the Complainant advising him to go to Student Disability Services (SDS)?**

No. Their only discussions were about the Complainant's accommodation of extra time on exams. The witness assumed that the Complainant had already gone to SDS.

**8. Did you support the Complainant taking the exam a third time?**

Yes. He thought the Complainant had come up with a good alternative, requesting more time to write out the questions. He also thought the Complainant could do the work.

**9. What is your understanding of how students receive disability-related accommodations at the University?**

He knows that students can go to SDS if they have a disability and need an accommodation. He has never had any student come to him directly and ask for academic adjustments.

**10. Have you been provided training on Section 504 or how students get accommodations?.**

No. He knew there was something about it in the student handbook and did some research on his own when asked to be the Complainant's advocate.

**11. Is the oral portion of the Qualifying Exam required to be oral?**

"It always has been." The witness said the oral portion is primarily because students are going outside the school to do research and they are going to be challenged to prove their work. Students "have to be able to do that in a verbal manner if they're going to be in research and academia."

2

04-16-2275 (University of South Alabama)

### 12. Did you have any role in the Complainant's appeal to SPEC after the third failed exam?

He was asked to serve as the Complainant's advocate again in May 2016 after the third failed attempt. The Complainant sent drafts of the letters outlining the reasons why he was discriminated against the third time and in one letter the Complainant referenced the ADA. The witness reiterated to SPEC that the Complainant had gotten A's on the exams he had to make up, and despite some concerns with the dissertation, the Complainant's written dissertation was passed by the committee, allowing the Complainant to take the exam a third time. He also told the SPEC that the Complainant had expected some type of accommodation for his disability and pointed out the report from the Complainant's psychologist provided the day of the meeting.

To his knowledge, no one has ever been given three chances to pass the oral exam. The witness did not think it was his place to say whether or not the witness should have received another attempt at the exam. During the SPEC meeting he emphasized the points the Complainant wanted highlighted, including that the psychology report documented the disability.

### 13. What are the criteria for receiving a passing score/rating on the oral examination?

There are no specific written criteria. The majority of the committee has to vote that the person answered the questions appropriately. The witness was not aware that the Complainant had been provided the questions for the exam ahead of time until the SPEC meeting.

### 14. Do you recall anyone discussing the Complainant's disability status during the SPEC meeting?

Other than the Complainant's letter from his psychologist being discussed, he does not recall. He does not recall if the Complainant was asked any questions during the meeting.

**The University's counsel asked the witness if there are alternatives to the oral exam and what would he do if a student came to him asking about an alternative to the oral exam.**

The witness said that he thought there were probably alternatives. When doing research on disabilities after he was asked to serve as the Complainant's advocate, he found that students usually ask to take exams orally instead of written and that there would be the possibility of an alternative format. If a student could not speak, then he would send them to disability services and might be something the student could work out. He said the Complainant never mentioned any other disabilities other than the one he registered with the University.

The Witness had no questions or any additional information to add.

**[End Call]**

3

Attachment #4

Attachment #5

# UNIVERSITY OF SOUTH ALABAMA



OFFICE OF THE ASSISTANT DEAN OF STUDENTS
AND DIRECTOR OF STUDENT DISABILITY SERVICES

TELEPHONE: (251) 460-7212
320 ALUMNI CIRCLE
FACULTY COURT WEST, SUITE 19
MOBILE, ALABAMA 36688-0002
FAX: (251) 414-8176

## MEMORANDUM
Student Disabilit, Services

**Date:**      May 3, 2016

**To:**      SPEC Committee

**From:**      Dr. Andrea O. Agnew, Assistant Dean of Students

**Subject:**      Michael Perez J00208017

Michael Perez is registered with the Office of Student Disability Services (SDS) for a qualified disability and is entitled to reasonable accommodations.

Mr. Perez has filed a grievance with SDS asserting that the oral comprehensive examination in the College of Medicine's Basic Medical Sciences program is discriminatory towards individuals with impaired speaking skills.

Mr. Perez succinctly outlines in enclosed documents that he has successfully passed the written portion of the qualifying exam as well as demonstrated mastery of basic medical science knowledge as evidenced by course work and GPA. Despite a stellar academic record, Mr. Perez has not been able to pass the oral qualifying exam as determined by an examination committee.

After his 3rd failed attempt at his oral exam, Mr. Perez submitted to SDS a letter from his psychologist, Dr. N. Faye Pierce, which provided additional details related to his registered diagnosis. Further, on April 27, 2016, SDS staff spoke at length with Dr. Pierce to gain insight on the impact of the disability in the contextual setting of an oral exam. She indicated that under stressful situations, Mr. Perez's stutter is made worse and his ability to express himself orally and the speed at which he processes information is greatly hampered. She indicated that he may "appear to be stuck" i.e. unable to respond as expected.

As there appears to be no written rubric or published expectations for the oral examination other than Pass or Fail (BMS Handbook, page 29), it is unclear if Mr. Perez received subjective assessments based on his lack of oral fluency and processing speed. As noted in a feedback document given to Mr. Perez after his 3rd failure, there was one committee member that felt that Mr. Perez demonstrated sufficient basic medical science knowledge.

SDS requests that the sum total of Mr. Perez's body of work at USA inclusive of classroom performance, GPA, and written qualifying exam serve as evidence that he has sufficient knowledge to be admitted to candidacy for the Ph.D.

Additionally, SDS is available to be a part of any formal deliberative procedures that may be undertaken by the College of Medicine to diligently assess the available options for modifications of the oral exam for individuals with speech disabilities.  Any across the board policy precluding modifications or the consideration thereof does not support the spirit of the Americans with Disabilities Act.

Attachment #6



# UNIVERSITY OF SOUTH ALABAMA

August 8, 2016

Michael Perez
4205 NE Riverside Loop
McMinnville, OR 97128

Dear Michael,

In my role as facilitator of the informal resolution process regarding your unlawful discrimination complaint (letter dated July 13, 2016), I met today with the individuals named as respondents in your complaint, which include members of the BMS Graduate Program SPEC committee and the faculty participating in your Qualifying Examination. In your complaint, you outlined several requests, which were discussed by the group.

In an effort to resolve your complaint informally, the respondents agreed to:
1. Commit to a self-evaluation of the BMS Graduate Program policies, practices and exam requirements, including evaluation of reasonable accommodations. Note that review of the program is performed on a regular basis. The last extensive internal and external reviews were completed in 2010 and 2011, respectively, followed by a Graduate Program retreat in 2011.
2. Request a review of BMS Graduate Program policies, practices and exam requirements by Student Disability Services.
3. Review and articulate the core competencies that the Qualifying Examination intends to assess AND articulate the performance standards students are expected to meet in the BMS Graduate Program.

The respondents will not agree to the following:
1. Reinstate you in the BMS Graduate program. The group agreed with the SPEC recommendation on May 5, 2016 for dismissal. You were given significant accommodations for the third Qualifying Examination, including notification of the exam focus areas and specific questions to be asked in advance, and allowance for a page of prepared answers to be brought to the exam. Extended time was allowed, and materials were available for you to make notes and develop written answers to read aloud in response to questions. Your request for additional accommodations, specifically a multiple choice paper format, was received after the third Qualifying Examination. It is noted that this format was denied by Student Disability Services prior to the third attempt, and the respondents agree with Student Disability Services that a multiple choice format would fundamentally alter the intent/scope of the exam.
2. Allow you to take a fourth Qualifying Examination with a change in format, which was not considered as your request for reinstatement was not considered an agreeable option.
3. Allow for a paper (written) Qualifying Examination. In your letter, you quoted the BMS Student Handbook statement that departments have the option "to retain a … written exam testing the student's overall knowledge in that discipline or focus area." However, the Handbook goes on to say that "this written exam will not replace any portion of the requirements outlined below." Those requirements detail the written and oral components of the Qualifying Examination.

Please let me know at your earliest convenience whether you are willing to resolve your complaint as outlined above. If it would be helpful for you and I to talk via phone or Skype, we can arrange a mutually agreeable time to do so.

Best,

(b)(6),(b)(7)(C)

DEPARTMENT of PHYSIOLOGY & CELL BIOLOGY/COLLEGE of MEDICINE
MSB 3074 | 5851 USA Drive North | Mobile, Alabama 36688-0002
TEL: (251) 460-7004 | FAX: (251) 460-6386 | SouthAlabama.edu

Attachment #7



# UNIVERSITY OF SOUTH ALABAMA

February 15, 2018

Michael R. Perez
1617 Santa Fe Trail
Krum, TX 76249

Dear Mr. Perez:

I am in receipt of your correspondence of February 5, 2018 regarding your proposal for an informal resolution. As you will recall, an attempt at such a resolution was made prior to the filing of your OCR complaint.  As was the case in that earlier process, your request for reinstatement into the Ph.D. program of Basic Medical Sciences will not be granted.

We wish you luck in your future endeavors.

Regards,

Tony G. Waldrop, Ph.D.
President

TGW:slg

Attachment #8



**U.S. Department of Justice**

Civil Rights Division

_____

Disability Rights Section - NYA
950 Pennsylvania Avenue N.W.
Washington, DC  20530

JUN 1 9 2018

Michael Perez
1617 Santa Fe Trail
Krum, TX 76249

      Re:    University of South Alabama

Dear Mr. Perez:

      This letter is in response to your complaint filed with this office alleging a possible violation of the Americans with Disabilities Act (ADA).

      After carefully reviewing the information that you provided, your correspondence indicates that you have filed a complaint with or against another government agency.  The Department does not serve as a reviewing authority for the decisions of other Federal or State agencies following their investigations of complaints about discrimination.  Nor does the Department duplicate the efforts of other agencies already engaged in investigations.  For these reasons, we are taking no further action with respect to your correspondence.

      If you have questions about the ADA, you may call the Department of Justice's ADA Information Line at (800) 514-0301 (voice) or (800) 514-0383 (TTY).  We regret that we are unable to be of further assistance in this matter.

                             Sincerely,

                             Carmen Romero
                             Director of Intake Unit
                             Disability Rights Section

634021



Express



A 6 16:00
0764
12.18
Rt 193

ORIGIN ID:ONYA  (850) 449-3524
MICHAEL PEREZ
1617 SANTA FE TRAIL

KRUM, TX 76249
UNITED STATES US

SHIP DATE: 17DEC18
ACTWGT: 0.70 LB
CAD: 6991079/SSF01922

BILL CREDIT CARD

10

## U.S. DISTRICT CT.
## 155 ST. JOSEPH ST.

### MOBILE AL 36605

(000) 000-0000          REF:
PO:                     DEPT:

FedEx
Express

E

TRK# 7844 9632 0764
[0201]

TUE – 18 DEC 3:00P
STANDARD OVERNIGHT

XH MOBA                36605
                 AL--US   BFM